UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
WILLIAM P. McCOMISH,

**COMPLAINT**

                        Plaintiff,        **Docket No. _____**

        -against-             **Jury Trial Demanded**

AL ZGOLINSKI, SEAN CONWAY,
ANDREA CONNOR, THE VILLAGE OF
COLD SPRING, NEW YORK;
THE BOARD OF TRUSTEES OF THE VILLAGE
OF COLD SPRING, NEW YORK, THE
ARCHITECTURAL AND HISTORIC DISTRICT
REVIEW BOARD OF THE VILLAGE OF COLD
SPRING, NEW YORK and "JOHN DOES
AND JANE DOES 1-15",

                       Defendants.
--------------------------------------------------------------X

      Plaintiff William P. McComish, by his Attorney, Dennis E. A. Lynch, Esq. as and for his

Complaint against the above-captioned Defendants based upon their conduct as set forth herein

respectfully alleges upon information and belief as follows based upon all information that said

Plaintiff has obtained today and based upon admissions by the Defendants and the employees

and officials of the Defendants

## <u>SUMMARY AND NATURE OF ACTION</u>

      1.  This action is brought by Plaintiff to obtain redress for wrongs from past

and ongoing Civil Rights Violations involving the infringement of Plaintiff's property and other

Federal rights by Defendants regarding Plaintiff's simple improvements to a driveway on

Plaintiff's Property.

      2.  This Property has been held by Plaintiff's Family for decades and for many

decades there has always been access to the Property from the adjoining Street.

3. In fact, where the driveway improvements were requested recently and approved by the Village, initially it was at the exact location of where a less safe, but certain, driveway existed for decades. Over those many years before issuance of this most current Building Permit, the McComish Family generally and the Plaintiff specifically invested substantial time and money to have access to the Property along this same driveway area. The goal was to be safer.

4. The Building Permit Application by Plaintiff was only to make that access safer and that would require the minimum removal of any rock. There was never any definition or claim that "outcropping" was involved.

5. At no time in the past decades has anyone from the Village ever determined that the rock to be removed as part of this Building Permit Application had any historic importance or was considered by the Village to be a significant (or even insignificant) "natural resource" in the Village.

6. After the Building Permit was lawfully issued to the Plaintiff, the Plaintiff invested substantial time and money to undertake the permitted work on the driveway. But, after complaints from self-proclaimed influential connected others, the Defendants' Code Enforcement Officer revoked said Building Permit since removal of rocks in the driveway area involved "a natural resource within the Historic District".

7. Yet, that same Code Enforcement Officer admitted that "**the term natural resource**" is a "**vague definition**". As such, application Code provision that purports to require a referral to the Historic Board is unconstitutional vague and unenforceable. Additionally, the use of the access from the public road to the Plaintiff's Property over the years and the

expenditures of time and money in this driveway access has resulted in the vested rights of the Plaintiff under the doctrine of *Orangetown v. Magee*, 88 N.Y.2d 41 (1996).

8. That same Code Enforcement Officer thereafter unlawfully referred the Plaintiff's Building Permit Application to the Defendant Architectural and Historic District Review Board (the "Architectural Review Board".

9. After considerable political pressure to stop the Plaintiff from making his existing driveway safer, the Architectural Review Board met on January 13, 2021 to consider said referral from the Code Enforcement Officer.

10. At that time and after being placed on notice that the Architectural Review Board was acting outside of its jurisdiction and after the Defendant Individual Members were on notice also that the term "natural resource" was considered to be unconstitutionally void for vagueness, the Individual Defendant Members of the Architectural Review Board voted to deny the right of the Plaintiff to lawfully make his Property safer.

11. Accordingly, the actions of the Defendants toward the Plaintiff as set forth herein are illegal and this Court should so declare and award Plaintiff monetary damages.

12. These Civil Rights violations have continued to have the purpose and effect of directly depriving and impairing Plaintiff's' enjoyment of constitutional and statutory rights Defendants' conduct is and should be declared unlawful, and should be permanently enjoined and remedied by an appropriate award of monetary damages, and Defendants and all those acting in concert with them should be enjoined from performing any and all acts in furtherance of depriving Plaintiff of his rights under law.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and § 1343(a).

14.   This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution;  the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1983, and 1988. Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

15.   Venue is proper under 28 U.S.C. § 1391(b) in that Defendants reside and the claims alleged herein arise in this Judicial District.

## PARTIES

16.   At all times relevant Plaintiff William P. McComish ("Plaintiff") is and was a resident of the State of New York

17.   At all times relevant the Plaintiff owned real property and improvements at 29-31 Rock Street, Cold Spring, New York 10516 at Tax Map Section 48.12-1-20 (the "Property").

18.   At all times relevant herein, the Defendant Village of Cold Spring, New York ("Defendant Village") is a Municipal Corporation organized under the laws of the State of New York having jurisdiction over all municipal matters within the territorial boundaries of the Village of Cold Spring, New York including the adoption of zoning codes and enforcement of applicable rules, regulations and codes.

19.   At all times relevant herein, the Defendant Board of Trustees of the Village of Cold Spring, New York ("Defendant Village Board") is the duly constituted municipal board that has jurisdiction over all matters within the territorial limits of the Village and has enacted Local Laws regarding Zoning, Planning and any Historic issues .

20.   At all times relevant herein, the Defendant Architectural and Historic District Review Board (the "Defendant Architectural Review Board") was authorized by Local Laws adopted by the Defendant Village Board with certain powers, rights and responsibilities as more fully set forth in Chapter 64 of the Village Zoning Code (the "Code").

21.     At all times relevant Individual Defendants Al Zgolinski, Sean Conway and Andrea Connor (the "Individual Defendants") are members of the Defendant Architectural Review Board and reside in the Village of Cold Spring, Putnam County, State of New York.

22.     At all times, the Defendants "John Does and Jane Does 1-15" are intended to be persons whose names and/or actions are presently unknown and who conspired with the named Defendants regarding the actions set forth in this Complaint. Upon filing of this Complaint as necessary, all will be duly named at an appropriate time.

## STATEMENT OF FACTS

23. For decades prior to the filing of this Litigation, the Family of Plaintiff McComish owned the Property which is the subject matter of this Litigation.   For a considerable time prior to the filing of this Litigation, the Property was accessed from a public road in the Defendant Village known as Rock Street (the "Street").

24. For a considerable time prior to the filing of this Litigation, the Property driveway was in the same location where the Plaintiff sought to make safer driveway access to and from the Property to the Street.

25. For a considerable time before the filing of this Litigation, the McComish Family generally and the Plaintiff specifically invested substantial time and money to have access to the Property along this same Driveway area from the Street to the rear of the Property (the "Driveway"),

26. Prior to November 4, 2020,  the Plaintiff sought to make that Driveway safer which would require among other things, the minimum removal of any rock on or within the Property.

27. At no time in the past decades had any of the Defendants ever determined that any Driveway rock to be removed had any historic importance or was considered by the Village to be a significant (or even an insignificant) historic or natural resource in the Defendant Village.

28. Prior to November 4, 2020, the Plaintiff applied to the Village for issuance of a Building Permit regarding work on the Driveway and area.

29. On that same date of November 4, 2020 the Defendant Village Code Enforcement Officer issued a Building Permit No 2020-10-003 (the "Building Permit") for the Plaintiff to undertake the work on the Driveway as applied for by the Plaintiff.

30. The Plaintiff proceeded to add to the substantial improvements to the Driveway pursuant to that lawfully issued Building Permit until influential persons began to apply pressure for said Building Permit to be revoked.

31. After worked commenced based upon the lawfully issued Building Permit, on or about December 3, 2020 all efforts involving the expense and effort by the Plaintiff to make safer the Driveway were stopped fully by the Defendant Village's Code Enforcement Officer issuing a "Revocation of Building Permit".

32. The purported reason for issuance of the Revocation of Building Permit was that "this work must be approved by the Historic District Review Board prior to continuing".

33. Thereafter, the said Defendant Village Code Officer who issued the Revocation of Building Permit" provided an Official Village Memorandum "to clarify the position of the Building Department on these matters".

34.   Concerning any issues regarding the Defendant Architectural Review Board, the Defendant Village Code Enforcement Officer specifically reviewed the Village Code provision at Section 64-2 regarding "Usage and Definitions" and expressly noted that the definition of "natural resource" in the Village Code was a "**vague definition**" and more specifically remarked:

> Since this is a **vague definition** of the term **natural resource**, I have referred the question to the HDRB (Defendant Architectural Review Board) for discussion at their meeting which is tonight for a determination of whether this particular outcropping is **"unique" AND "contributes to the character"**. (emphasis supplied).

35.   The matter was referred to the Defendant Architectural Review Board and at one such Defendant Architectural Review Board Meeting, the Village Planning Board noted that nothing in the Building Permit Application granted to Plaintiff involved any Planning Board or other planning concerns that impacted safety, health or welfare issues in the Village.

36.   Notwithstanding the same, one Member of the Defendant Architectural Review Board made remarks in sum and substance that were not relevant to the Plaintiff's Building Permit, but rather were concerns about "creating a precedent" or other remarks that had nothing to do with the referral by the Defendant Village Code Enforcement Officer to the Defendant Architectural Review Board.

37.   After two such Meetings of the Defendant Architectural Review board, there was no decision made on the Plaintiff's Building Permit matter referred to said Defendant Board.

38.   Contrary to the lawful requirements for the Defendant Architectural Review Board to act, when considering Plaintiff's Building Permit matter Individual Defendant Board Members made comments that were consistent with its own history of delaying other

applications for months and months and requiring repeated submissions to the Defendant

Historic Review Board for no lawful reason whatsoever.

39.   The actions of the Defendants in adopting and enforcing such an admittedly vague

term such as "natural resource" both on its face and as applied to Plaintiff's Property as well as

allowing unbridled discretion to the Defendant Architectural Review Board in considering

applications before said Board is a violation of Plaintiff's civil rights as set forth herein.

40.   The actions of the Defendants in revoking the Building Permit lawfully issued to

the Plaintiff otherwise violates the due process of the Plaintiff.

41.   The actions of the Defendants otherwise violate the rights of the Plaintiff.

## THE JANUARY 13, 2021 DEFENDANT ARCHITECTURAL REVIEW BOARD MEETING REGARDING PLAINTIFF

### A.  THE ARCHITECTURAL REVIEW BOARD JURISDICTION

42.   The Defendant Village in 1976 adopted a Local Law at Chapter 64 of the Village

Code (the "Local Law").

43.   That Local Law established the Defendant Architectural Review Board with a

Purpose and Policy set for at Section 64-1.  That Local Law was amended several times.

44.   Nowhere within the four corners of the Local Law's Purpose and Policy is there

any regulatory reference to jurisdiction regarding any "rock" or "rock ledge" or anything not

related to the Architectural or Historic heritage in the Village as defined in the Local Law.

45.   Said Local Law by its express terms sought to regulate matters involving "the

unique and distinctive architectural heritage of Cold Spring" (Section  64-1(A)) as well as

protecting "within the Village places, sites, buildings and improvements of historic or

architectural significance or uniqueness of exterior design or construction, which should be

protected and preserved to maintain the architectural character of the Village . . . ." (Id. at C).

46. Again, nothing in said Local Law provided the Defendant Architectural Review Board with lawful power or jurisdiction to regulate rock or any rock ledge or any rock outcropping on the Plaintiff's Property.

47. More to the point that said rocks are not part of any "Public Policy" of this Local Law is that the aforesaid protection or preservation of only "natural resources" is nowhere mentioned in the legislatively delineated goals of that Local Law's "Public Policy" (See, Id. at D(1) to (8)).

48 . To the extent that any "natural resources" are referenced in the Local Law, what constitutes any such "Natural Resource" is limited by the Local Law's definition of the same to be "A unique geological or geographical feature that contributes to the character of an individual landmark or the Historic District, including but not limited to rock outcroppings, shorelines and streambeds" Said definition was added in 2018 approximately four (4) decades after the Plaintiff's Family acquired the Property.

49. Additionally, at no time was the Property of the Plaintiff or any feature on said Property ever determined by the Village to be within the definition of a "Natural Resource".

50. Accordingly, the gravamen of the Local Law is the designation of "Historic Landmarks" or "Modifications to the Historic District Boundaries" in the Village (Section 64-6) and not the regulation of rocks, rock ledges or rock outcroppings that have not been determined to be "unique" as defined in said Local Law.

51. Thus, this Local Law confirms a lawful authority for the Defendant Architectural Review Board to only act on matters "within the Village that reflect special elements of the Village's historical, architectural, cultural, economic or aesthetic heritage". (Id. at D).

52.  No part of Plaintiff's Property has ever been determined to  include any "Natural Resources" within any definition of said Local Law.

53.  Most importantly of all, however, the Local Law must respect the constitutional property rights of Village residents by requiring notice to property owners such as Plaintiff if Plaintiff's  Property is to be designated as a "Landmark" or  have any rock features on said Property included in the "Historic District Boundaries". (Section 64-6).

54.  Any such attempt to restrict the property rights of individuals, including the Plaintiff, requires the Defendant Architectural Review Board to also refer the potential property rights restrictions to the democratically elected Village Board of Trustees. (Section 64-6 (J) and only after notice to the property owner whose property rights are to be restricted. (Id. at K).

55.  As more fully set forth herein, the Defendants acted to violate the rights of the Plaintiff and Plaintiff's property.

B. **THE ARCHITECTURAL REVIEW BOARD ACTS BEYOND ITS LAWFUL JURISDICTION  AND UPON A LOCAL LAW THE VILLAGE OFFICER CHARGED WITH INTERPRETING THE CODE ADMITS IS "VAGUE"**

56.  The Village Code Enforcement Officer when presented with a Building Permit Application by the Plaintiff to simply make safer the Driveway to Plaintiff's Property which Driveway had acquired vested rights under applicable New York Law ,promptly and properly issued a Building Permit for said Driveway work.

57.  Equally as promptly upon said Driveway work being undertaken, said Village Code Enforcement Officer after hearing political pressure issued a Stop Work Order.

58.  The Plaintiff immediately addressed any such concerns and thereafter the Village Code Enforcement Officer allowed Plaintiff's Driveway work to continue.

59.  Subsequently, the Village Code Enforcement Officer was asked to confirm that all activities by the Plaintiff at the Property were fully compliant with all health and safety concerns. Said Code Enforcement Officer never advised that there were any such health or safety concerns.

60.  Notwithstanding the same and with the Plaintiff never requesting any review by the Defendant Architectural Review Board, said Board unlawfully asserted jurisdiction over the Plaintiff's Property.

61.  The Defendant Architectural Review Board had multiple Meetings with the Plaintiff and his representatives present and at no time acknowledged that the definition of "natural resources" was admitted by the Village to be "vague" or that said definition of a Natural Resource applied to Plaintiff's Property.

62.  Plaintiff knew that the Defendant Architectural  Review Board had previously required another property owner to return to said Board for over 30 times until ultimately said property owner had to retain legal counsel versed in civil rights to have the Defendants lawfully act.

63.  Accordingly, Plaintiff sought a definitive determination from said Defendant Architectural Review Board since the delay by said Board continued to cost Plaintiff substantial moneys and otherwise chill the exercise of Plaintiff's rights.

64.  Prior to that definitive determination Defendant Architectural Review Board Meeting, the Plaintiff caused there to be communicated to the Defendants the unlawful basis that said Defendants were acting toward the Plaintiff.

## C.  **THE DEFENDANT ARCHITECTURAL REVIEW BOARD ACTIONS**

65.  At the start of said January 13, 2021 Defendant Architectural Review Board

Meeting, the Defendant Board refused to acknowledge that the Village by its Code Enforcement Officer had previously determined that the definition in the Local Law of "natural resources" was vague.

66. At the start of the Meeting, said Defendant Board refused to acknowledge that its Attorney had met with said Board Members for no less than 30 minutes prior to that Meeting to advise of the applicable law and that the Village Code Enforcement Officer had already confirmed the "vague" definition of "Natural Resources" in the Local Law.

67. At no time prior to said January 13, 2021 Meeting did the Individual Members of the Defendant Architectural Review Board note or otherwise confirm that there were no regulations promulgated pursuant to the Local Law at Section 64-5a that provided for the "rules and regulations as may be necessary for the conduct of its business . . . ." (Id. at A). As such, the Defendant Architectural Review Board had no power to act regarding Plaintiff's Property.

68. Notwithstanding the same, the said Defendant Board undertook a review of the Plaintiff's matter without any lawful basis to consider any "referral" from the Village Code Enforcement Officer regarding Plaintiff or Plaintiff's property, and, without any testimony by the Village Code Enforcement Officer so the Plaintiff could cross-examine such testimony

69. Additionally at said Meeting, a Village Citizen who proclaimed himself as such, although who was the Chairman of the Village Planning Board, objected to the unlawful exercise of jurisdiction by the Defendant Architectural Review Board regarding the Plaintiff's Property to simply make safer an existing Driveway to the Property of the Plaintiff.

70. The Individual Defendants without consulting Legal Counsel who was present at the Meeting rejected any challenge to the said Board's jurisdiction. Said Defendants further

continued to unlawfully attempt to redesign the plan that said Plaintiff had submitted regarding the Driveway work by Plaintiff to make his Driveway simply safer.

71. When said Individual Defendant Architectural Review Board Members were advised by Counsel for the Plaintiff at said Meeting that they were unlawfully acting as a Planning Board, said Counsel to the Defendant Architectural Review Board cautioned said Board about acting as a *de facto* Planning Board.

72. At said Meeting, the said Defendant Board was further advised they were exceeding their jurisdiction and were enforcing an admittedly "vague" provision of the said Local Law.

73. In complete and conscious disregard of the rights of the Plaintiff, said Board proceeded to act on the Plaintiff's Property without regard to the unlawful consequences of the same.

74. After the Defendant Individual Board Members continued to unlawfully consider the Plaintiff's matter, the said Defendant Individuals proceeded to force Plaintiff to consider alternatives that were vague, uncertain, illegal and calculated only to delay and deny Plaintiff his rights when the requirement of said Defendant Board was to act upon the matter presented regarding the Plaintiff.

75 The Plaintiff knowing of the past repeated delays of the said Defendant Individual Board Members requested that the said Defendant Board rule upon the Village Code Enforcement Officer's referral and not leave the Plaintiff in the legal Limbo that said Individual Board Members have done to others.

76. The said Defendant Individual Board Members then proceed to vote to "deny" the matter involving the Plaintiff and his Property without any more comment, conditions or communications associated with said denial vote.

77. Thereafter using the means of interstate communications, the said Individual Defendants with the approval of the other Defendants did falsely and fraudulently transmit a purported Denial Decision by said Board with purported terms and conditions of said Decision that were false and fraudulently claimed to have been made when the vote of said Board was undertaken.

78. Said false and fraudulent such Denial Decision by the Individual Defendant Board Members was conjured to make it appear that the said Individual Defendant Board Members had stated such comments at the time of the Denial Decision vote was taken in a Public Meeting with the Plaintiff and his representatives present.

79. The Defendants knew or should have known that the application of the Local Law to the Plaintiff as undertaken as set forth herein would cause the Plaintiff to sustain substantial monetary and other damages.

80. Despite the aforesaid knowledge, the Defendants acted or allowed the foregoing actions for unlawful reasons regarding Plaintiff and Plaintiff's Property.

## CLAIMS FOR RELIEF
## AS AND FOR A FIRST CLAIM FOR RELIEF

81. The Plaintiff repeats and realleges each and every paragraph set forth herein as though fully set forth herein.

82. The Fifth and Fourteenth Amendments of the United States Constitution guarantee all persons, including the Plaintiff, due process of law.

83. The Plaintiff has constitutionally protected liberty and property rights in the ownership and use of his Property including the Driveway and also including but not limited to the right to use, enjoy, and his liberty and property rights to use said driveway in accordance

with the laws and as well as the right to have his application for a Building Permit from the Defendants to be processed, considered and decided in accordance with the law.

84. Defendants impaired, destroyed, infringed upon and/or interfered with the Plaintiff's liberty and property rights in an outrageously arbitrary and capricious manner for improper and malicious purposes with the intent to injure said Plaintiff.

85. The Defendants abused that process to deprive the Plaintiff of his lawful use and enjoyment of said liberty and property rights out of impermissible animus.

86. Defendants deliberately and improperly interfered with the process by which, and the laws pursuant to which individuals such as the Plaintiff is allowed to use his Property that has acquired vested rights under the applicable laws and in the lawful issuing of permits and approvals, in order to block or delay the validity of the Building Permit which was a lawful Permit and engaged in a campaign of harassment and delay designed to deny or damage said Plaintiff of his property, liberty and other rights and/or to force the Plaintiff to abandon its existing Driveway to the Property so as to substantially impair the value of such Property.

87. By reason of the foregoing, Defendants have violated and continue to violate the rights of the Plaintiff under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 under color of law and as part of a municipal policy.

88. As a direct and proximate result of Defendants' conduct, the Plaintiff has suffered a distinct and actual injury to his civil rights.

89 As a direct and proximate result of the above-referenced actions, the Plaintiff's Fifth and Fourteenth Amendment rights to Due Process have been violated by Defendants and

said Plaintiff has suffered and will continue to suffer substantial losses. The amount of such damages shall be determined at trial, but in no event less than $5,000,000.

90.    In addition since the Individual Defendants knew what they did was clearly and objectively wrong and allowed the conduct set forth punitive damages should be imposed in an amount of $10,000,000 or such other amount as is appropriate as an example to show that the property rights of all in the Defendant Village, including the Plaintiff must be respected at all times.

## AS AND FOR A SECOND CLAIM FOR RELIEF

91.   The Plaintiff repeats each and every paragraph set forth herein as though fully set forth herein.

92.    Defendants selectively treated the Plaintiff as compared with others similarly situated who did not speak out against violations of property rights in the past.

93.    Defendants' actions as aforesaid were not rationally related to a legitimate governmental interest.

94.    Defendants' actions in treating the Plaintiff differently from those similarly situated were invidious and wholly arbitrary.

95.    Defendants singled out the Plaintiff with malevolent or bad faith intent to injure said Plaintiff and/or to inhibit or punish Plaintiff's exercise of his constitutional property rights and/or rights of freedom of speech and freedom of association.

96.    No rational person could regard the circumstances of the Plaintiff to differ from those of the others similarly situated as aforesaid to justify the differential treatment on the basis of a legitimate government policy, and the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that Defendants acted on the basis of a mistake.

97     Defendants, by their acts, have abridged and violated the rights of the Plaintiff to

Equal Protection  and other civil rights in breach of 42 U.S.C. § 1983 and in violation of the Fifth

and Fourteenth Amendments to the Constitution of the United States.

98.     As a direct and proximate result of the above-referenced actions, the Plaintiff's

rights to Equal Protection and other rights have been violated and the Plaintiff has suffered and

will continue to suffer substantial losses.  The amount of such losses shall be determined at trial,

but in no event less than $5,000,000.00.

## AS AND FOR A THIRD CLAIM FOR RELIEF

99.     The Plaintiff repeats each and every paragraph set forth herein as though fully set

forth herein.

100.     The Defendant Village Code at Chapter 64 on its face and as applied by

Defendants to the Plaintiff is so vague as to be unconstitutional and is void.

101.     The said Code provisions contain terms that when applied are so unclear that a

person of ordinary intelligence does not have a reasonable opportunity to know what is

prohibited, so that he or she may act accordingly.

102.     The said Code provisions lack explicit standards for those who apply them and

allow Plaintiff to be subject to arbitrary or discriminatory enforcement.

103     The said Code provisions are impermissibly vague since they abut upon sensitive

areas of basic constitutional rights in such a way as to operate when applied by Defendants to

inhibit the exercise of those rights of Plaintiff.

104.     The said Code provisions as applied by Defendants violate the Plaintiff's rights to

Due Process, as in all of their possible applications to said Plaintiff, they lack any legitimate

reason and are arbitrary, capricious, and not rationally related to any legitimate government interest.

105.    The said Code provisions when applied by Defendants were arbitrary, capricious, unreasonable, malicious, improperly motivated, and conscience shocking, sought to deprive the Plaintiff of the use of his civil and other property rights in access to and use of his Property.

106.    Additionally, whereas others similarly situated are not subject to the requirements and restrictions in the said Code provisions, and the Defendants irrationally distinguished between similarly situated classes.

107.    The said Code provisions were arbitrarily applied restrictions applicable only to the Plaintiff and designed only to thwart said Plaintiff's Property development plans without any relation to any legitimate governmental interest.

108.    Defendants knew of the Plaintiff's plans to develop the Property involving this Building Permit application of said Code provisions and Defendants' actions were intentional to prohibit the use planned by said Plaintiff.

109.    By reason of the foregoing, the said Code provisions should be declared void for vagueness, void for having violated the Plaintiff's Due Process Rights, and void for having violated said Plaintiff's Rights to Equal Protection and other civil rights of the Plaintiff.

110.    As a direct and proximate result of the above-referenced actions in applying the said Code provisions, the Plaintiff's Fourteenth Amendment rights to Due Process and Equal Protection as well as other civil rights have been violated by Defendants and said Plaintiff has suffered and will continue to suffer actual damages and substantial losses. The amount of such damages shall be determined at trial, but in no event less than $5,000,000 plus punitive damages of $10,000,000 or such other amount as is set by this Court for exemplary purposes.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

111.    The Plaintiff repeats each and every paragraph set forth herein as though fully set forth herein.

112.    By reason of the expenditures and other efforts by the Plaintiff concerning the Property Driveway to so lawfully operate the same for so many years, the Plaintiff has vested rights in the Driveway access rights and requirements.

113.    Defendants acted in bad faith and unduly delayed acting upon the Plaintiff's Building Permit application as aforesaid for the purpose of preventing said Plaintiff from lawfully completing said Driveway to make it safer.

114     Defendants delayed rendering determinations as to the Plaintiff's Building Permit as aforesaid and such delay was the product of malice, bad faith, oppression or manipulation as well as being outrageously arbitrary and capricious and otherwise violation of vested rights Plaintiff has in said Driveway specifically and Property generally.

115.    By reason of the foregoing, this Court should declare that the Plaintiff be allowed to operate and continue to work on the Driveway and that the violation of Plaintiff's vested rights in said Driveway and Property be enjoined.

## RELIEF SOUGHT

**WHEREFORE**, the Plaintiff demands Judgment against all Defendants as follows:

As to all claims for Relief:

a.      Compensatory damages against Defendants jointly as well as individually in an amount to be determined at trial, but in no event less than $5,000,000 plus punitive damages in the amount of $10,000,000 against the Individual Defendants or such other amount as this Court believes is proper for exemplary reasons;

b.      Awarding Plaintiff his costs, disbursements and reasonable Attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988;

c.      Preliminarily and permanently enjoining Defendants and all others acting in concert with them from undertaking any and all action in furtherance of the selective enforcement and any other individual or official act in furtherance of these or other illegal acts;

d.      Directing that the Individual Defendant Members of the Defendant Architectural Review Board be required to attend an approved training program where the constitutional property and other rights of Property Owners are taught and respected by said Individual Board Members.

e.      Declaring that the said Village Code provisions as applied are unconstitutionally vague and violates the Plaintiff's Due Process and Equal Protection Rights on their face and are void pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

f.      Granting such other, further and different relief as to this Court seems just, proper and equitable. The Plaintiff demands a Trial by Jury on all issues entitled to be tried by a Jury.

Dated: January 20, 2021
   White Plains, New York

        *Yours, etc.*

        BLANCHARD & WILSON
        By: _____
        Dennis E. A. Lynch, Of Counsel
        Attorney for Plaintiff
        235 Main Street, Suite 330
        White Plains, New York 10601
        845-729-5744